**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**KATE CHAPMAN, JERLEAN COLEMAN,
JOHN ALLEN CHAPMAN, MARVIN RAY CHAPMAN,
and WILLIAM CHAPMAN, on behalf of all the
Wrongful Death Beneficiaries of
Davie Lee Chapman, deceased**                                         **PLAINTIFFS**

VS.                                  **CIVIL ACTION NO.: 3:14CV00989-DPJ-FKB**

**LAUDERDALE COUNTY, MISSISSIPPI,
SHERIFF BILLY SOLLIE, MAJOR LAURIE ROBINSON,
CAPTAIN MELISSA MCCARTER,
DR. JOHN MUTZIGER,
OFFICER UNKNOWN SHAFFER, OFFICER UNKNOWN
CREEK, OFFICER UNKNOWN CULPEPPER,
OFFICER UNKNOWN CLARK, OFFICER UNKNOWN
ANDERSON, OFFICER UNKNOWN OLIVER,
SGT. UNKNOWN TUCKER, OFFICER UNKNOWN
ALLEN, OFFICER UNKNOWN SILVER,
OFFICER UNKNOWN DARLING, OFFICER UNKNOWN
CLARK, all in their official and individual capacities,
SOUTHERN HEALTH PARTNERS, INC., and
JOHN DOES 1-10**                                                       **DEFENDANTS**

___

**SECOND AMENDED COMPLAINT AND JURY DEMAND**
___

      COME NOW, PLAINTIFFS, on behalf of all wrongful death beneficiaries of Davie Lee Chapman, Deceased, and files this their complaint for Damages for Violation of Civil Rights under 42 U.S.C.A. § 1983 and under the Eighth and Fourteenth Amendments to the United States Constitution, and for Medical Malpractice and Negligence against Defendants , Dr. John Mutziger, and Southern Health Partners, and in support thereof would show unto the court the following:

INTRODUCTION

A severe asthma attack has often been likened to the experience of drowning. The linings of the airways become inflamed and swollen, thickened mucus is produced, and airflow is severely restricted. Panic and anxiety set in. The body begins to sweat. Coughing won't stop. Severe wheezing takes the place of normal respiration, and each breath becomes more difficult than the last. Eventually, the lungs become so tight that there is not enough air movement to produce wheezing, and a person loses the ability to speak, to call for help. The skin and lips turn blue, and without aggressive emergency room or intensive care treatment, the person loses consciousness and dies. Medical professionals recommend having an emergency plan of action ready in the event of an asthma attack, including calling 911 and using a rescue inhaler.

Davie Lee Chapman went through this hellish experience almost every day and night for more than three months. For three months Davie Lee Chapman begged relentlessly for help, he filed at least thirty-eight grievance reports with medical and prison staff requesting treatment for his asthma condition. Many of those grievances described in detail the thick mucus he was coughing up, the suffocating feeling he experience at night, and how the inability to breath and to stop coughing caused him to lose control of his bowels. On December 11, 2014, Davie Chapman nearly died from a bronchial asthma attack. He was rushed to the emergency room and his lungs had to be pumped to clear the heavy mucus build-up. In the days leading up to his death, he repeatedly requested to be taken to the emergency room for treatment. Davie Lee Chapman filed a federal civil rights lawsuit detailing the lack of medical treatment he received and the deliberate and callous indifference he was shown by prison and medical staff. During his final days, prison and medical staff observed Davie Lee Chapman in his cell, noting that he was "on his hands and knees" in the floor of his cell, trying to breath, screaming the guard's name, asking for an inhaler, asking for a breathing treatment, begging the officer to take him to the emergency room. No help ever came. Not even on February 4, 2014, when Davie Chapman lay prostrate in the floor of his prison cell telling the guard that he was dying, that he needed to go to the emergency room and that he could not breathe, did anyone help Davie Chapman. Davie tried in vain to take his last breathe, but to no avail. It was not until Davie Chapman lost consciousness that the guard observing him offered any assistance: performing CPR on a man whose airways were blocked with mucus and constricted to the point that air could not pass through them. Davie

Lee Chapman died of a confirmed bronchial asthma attack after more than three months of suffering. His crime: drinking and driving. Davie Lee Chapman could not call 911, he could not use a rescue inhaler, he could not even attempt simple home remedies that people sometimes use to treat asthma. He could only beg for help, but his many pleas fell upon deaf ears.

Defendants' willful and deliberate indifference to Davie Chapman's medical needs directly led to his untimely, excruciating, terrifying, and easily preventable death.

## PARTIES

### PLAINTIFFS

1. At all times pertinent hereto, the decedent, Davie Lee Chapman, was a citizen of the United States of America and a resident of the State of Mississippi confined to the Lauderdale County Detention Center.
2. At all times pertinent hereto, Plaintiff, Kate Chapman, decedent's mother, was a citizen of the United States of America and a resident of the State of Mississippi whose address is 104 Bonnie J. Street, Newton, Mississippi 39345, and a wrongful death beneficiary entitled to maintain suit pursuant to Miss. Code Ann. § 11-7-13 (1972) as amended.
3. At all times pertinent hereto, Plaintiff, Jerlean Coleman, decedent's sister, was a citizen of the United States of America and a resident of the State of Mississippi whose address is 365 East Church St. Ext., Newton, Mississippi 39345, and a wrongful death beneficiary entitled to maintain suit pursuant to Miss. Code Ann. § 11-7-13 (1972) as amended.
4. At all times pertinent hereto, Plaintiff, John Allen Chapman, decedent's brother, was a citizen of the United States of America and a resident of the State of Mississippi whose address is 202 Lea Street, Newton, Mississippi 39345, and a wrongful death beneficiary entitled to maintain suit pursuant to Miss. Code Ann. § 11-7-13 (1972) as amended.
5. At all times pertinent hereto, Plaintiff, Marvin Ray Chapman, decedent's brother, was a citizen of the United States of America and a non-resident of the State of Mississippi whose address is 2527 2nd Ave., Hickory, North Carolina, 28602, and a wrongful death beneficiary entitled to maintain suit pursuant to Miss. Code Ann. § 11-7-13 (1972) as amended.
6. At all times pertinent hereto, Plaintiff, William Chapman, decedent's brother, was a citizen of the United States of America and a resident of the State of Mississippi whose address is

300 Access Road, Decatur, Mississippi 39345, and a wrongful death beneficiary entitled to maintain suit pursuant to Miss. Code Ann. § 11-7-13 (1972) as amended.

7. A Petition will be filed in the Chancery Court of Newton County, Mississippi to confirm Plaintiffs and determine whether any further wrongful death beneficiaries exists.

## DEFENDANTS

8. At all times pertinent hereto, Defendant Lauderdale County, Mississippi, (hereinafter "County") is, and at all times mentioned was, a governmental entity organized under the law of the State of Mississippi. At all times mentioned, County had a non-delegable duty under the law to provide decedent with adequate living conditions and adequate medical care.

9. At all times pertinent hereto, Defendant, Sheriff Billy Sollie, was a citizen of the United States and a resident of the State of Mississippi, and was acting under color of state law and is responsible for the management, staffing, training and supervision of Lauderdale County Detention Center and its personnel and inmates, including the development and approval of Lauderdale County Detention Center medical care policies and procedures. Defendant Sollie is being sued individually and in his official capacity as Sheriff of Lauderdale County, Mississippi.

10. At all times pertinent hereto, Defendant, Major Laurie Robinson, was a citizen of the United States of America and the State of Mississippi and was acting under color of state law in her capacity as the jail administrator and is responsible for the day-to-day operations of the facility, including delivery of medical services to prisoners, and the development and approval of Lauderdale County Detention Center medical care policies and procedures. Defendant is being sued in her individual and official capacities.

11. At all times pertinent hereto, Defendant, Southern Health Partners, Inc., was a foreign corporation registered to do business in the state of Mississippi, and was a state actor, acting under color of state law, performing a function traditionally the exclusive prerogative of the state by providing in-house medical care to inmates. At all times pertinent hereto, Defendants, Southern Health Partners, Inc., Lauderdale County, Mississippi, and the other state officials named herein were intertwined in a symbiotic relationship involving the conduct of providing medical care, treatment, and making healthcare decisions, and

developing and approving medical care policies and procedures that directly led to Decedent's death. At all times pertinent hereto, the State of Mississippi, specifically Lauderdale County, Mississippi and the government officials named herein, coerced and significantly encouraged Southern Health Partners, Inc. to engage of the conduct complained of herein through contractual guarantees and financial payments for their performance of the traditional state function of providing medical care to inmates.

12. Defendant, Captain Melissa McCarter, was at all times relevant to the complaint, acting under color of state law as an employee of the Lauderdale County Detention Center, who may be served with process at 2001 5th Street, Meridian, Mississippi 39301. Defendant is being sued in her individual and official capacities.

13. Defendant, Officer Unknown Shaffer, was at all times relevant to the complaint, acting under color of state law as an employee of the Lauderdale County Detention Center, who may be served with process at 2001 5th Street, Meridian, Mississippi 39301. Defendant is being sued in its individual and official capacities.

14. Defendant, Officer Unknown Creek, was at all times relevant to the complaint, acting under color of state law as an employee of the Lauderdale County Detention Center, who may be served with process at 2001 5th Street, Meridian, Mississippi 39301. Defendant is being sued in its individual and official capacities.

15. Defendant, Officer Unknown Culpepper, was at all times relevant to the complaint, acting under color of state law as an employee of the Lauderdale County Detention Center, who may be served with process at 2001 5th Street, Meridian, Mississippi 39301. Defendant is being sued in its individual and official capacities.

16. Defendant, Officer Unknown Clark, was at all times relevant to the complaint, acting under color of state law as an employee of the Lauderdale County Detention Center, who may be served with process at 2001 5th Street, Meridian, Mississippi 39301. Defendant is being sued in its individual and official capacities.

17. Defendant, Officer Unknown Anderson, was at all times relevant to the complaint, acting under color of state law as an employee of the Lauderdale County Detention Center, who may be served with process at 2001 5th Street, Meridian, Mississippi 39301. Defendant is being sued in its individual and official capacities.

18. Defendant, Officer Unknown Oliver, was at all times relevant to the complaint, acting under color of state law as an employee of the Lauderdale County Detention Center, who may be served with process at 2001 5th Street, Meridian, Mississippi 39301. Defendant is being sued in its individual and official capacities.

19. Defendant, Sgt. Unknown Tucker, was at all times relevant to the complaint, acting under color of state law as an employee of the Lauderdale County Detention Center, who may be served with process at 2001 5th Street, Meridian, Mississippi 39301. Defendant is being sued in its individual and official capacities.

20. Defendant, Officer Unknown Allen, was at all times relevant to the complaint, acting under color of state law as an employee of the Lauderdale County Detention Center, who may be served with process at 2001 5th Street, Meridian, Mississippi 39301. Defendant is being sued in its individual and official capacities.

21. Defendant, Officer Unknown Silver, was at all times relevant to the complaint, acting under color of state law as an employee of the Lauderdale County Detention Center, who may be served with process at 2001 5th Street, Meridian, Mississippi 39301. Defendant is being sued in its individual and official capacities.

22. Defendant, Officer Unknown Clark, was at all times relevant to the complaint, acting under color of state law as an employee of the Lauderdale County Detention Center, who may be served with process at 2001 5th Street, Meridian, Mississippi 39301. Defendant is being sued in its individual and official capacities.

23. Defendant, Officer Unknown Darling, was at all times relevant to the complaint, acting under color of state law as an employee of the Lauderdale County Detention Center, who may be served with process at 2001 5th Street, Meridian, Mississippi 39301. Defendant is being sued in its individual and official capacities.

24. Defendant, Dr. John Mutziger, was at all times relevant to the complaint, acting under color of state law as an employee or contractor for Southern Health Partners, a state actor, and he himself was a state actor due to his performing a function traditionally the exclusive prerogative of the state by providing in-house medical care to inmates. At all times pertinent hereto, Defendants, John Mutziger, Southern Health Partners, Inc., Lauderdale County, Mississippi, and the other state officials named herein were intertwined in a symbiotic relationship involving the conduct of providing medical care, treatment, and making

healthcare decisions, and developing and approving medical care policies and procedures that directly led to Decedent's death. At all times pertinent hereto, the State of Mississippi, specifically Lauderdale County, Mississippi and the government officials named herein, coerced and significantly encouraged Southern Health Partners, Inc., and Dr. John Mutziger to engage of the conduct complained of herein through contractual guarantees and financial payments for their performance of the traditional state function of providing medical care to inmates. Defendant Mutziger is being sued in his individual and official capacities.

25. Defendants, John Does 1-10, are the unknown Defendants, including those prison staff members who observed and monitored Davie Lee Chapman and any employees of Southern Health Partners who observed, provided care or made recommendations or decisions regarding the care of Decedent. Defendants are being sued in their individual and official capacities.

## JURISDICTION AND VENUE

26. This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331(a) and under the substantive rights created by the Constitution of the United States of America.

27. All of the events alleged herein occurred in Lauderdale County, Mississippi and Venue is proper in the Southern District of Mississippi pursuant to 28 U.S.C.A. § 1391(b)(2).

28. As set forth above, Defendant, Southern Health Partners, Inc., and its employees, and Dr. John Mutziger are state actors for purposes of this litigation and are subject to liability under 42 U.S.C.A. § 1983

29. Plaintiffs have filed herewith a Certificate of Expert Consultation in accordance with Miss. Code Ann. § 11-1-58 attached hereto as Exhibit "A".

## FACTS

30. Plaintiff incorporates herein by reference, as if copied in full herein, all factual allegations made in the initial complaint filed December 23, 2014, in the instant action by Davie Lee Chapman, deceased.

31. The deceased, Davie Lee Chapman, had a history of severe asthma and revealed this fact to personnel upon his upon his entry to the Lauderdale County Detention Center as indicated by Defendants' booking forms.

32. On or about September 19, 2014, Davie Lee Chapman was incarcerated in the Lauderdale County Detention Center located at 2001 5th Street, Meridian, Mississippi 39301.

33. On or about December 11, 2014, the deceased's asthma deteriorated and the deceased suffered a life-threatening asthma attack requiring hospitalization outside of the Lauderdale County Detention Center. On information and belief, on the 11th day of December 2014, decedent was carried by ambulance to the Rush Hospital Emergency Room where he was treated for bronchial asthma attack.

34. Upon discharge, physicians from Rush prescribed decedent with an albuterol inhaler, and several other medications, but Defendants did not allow Decedent to keep or use the inhaler and Defendants did not administer his medication pursuant to physicians' orders.

35. Upon returning to the prison, the deceased was not given proper medication, nor was the decedent monitored properly by Decedents.

36. The defendants, and each of them, were all put on notice prior to the death of Davie Lee Chapman, that treatment and facilities in the prison were grossly inadequate.

37. Decedent filed over thirty eight grievances seeking medical treatment during the four months prior to his death, and in many of the grievances he complained of a lack of medical treatment and explained to prison officials that he felt like he was going to die if he did not get treatment, and that he was experiencing a "suffocating" feeling due to his asthma.

38. Defendants intentionally ignored the grievances and intentionally refused to provide him with adequate medical treatment.

39. Defendants monitored decedent during the day and multiple observation reports indicate the decedent was "on his hands and knees in the floor trying to breathe". Despite this fact, Defendants intentionally refused to give decedent proper treatment or to take him to the hospital.

40. Although the deceased was in serious condition for days before he died, no doctor was on duty nor was any doctor called to treatment, nor were any of Decedent's requests to be allowed to keep a rescue inhaler or be moved to a medical unit granted.

41. Defendants granted the decedent an occasional breathing treatment, but provided him no treatment at night, making him unable to sleep soundly and causing him to be constantly fatigued, aggravating his asthmatic condition.

42. As evidenced by the multiple grievances, breathing treatments, observation reports, medical diagnoses, and emergency room treatment, Defendants had full knowledge of Decedent's serious and life-threatening medical condition.
43. In spite of repeated requests and notices from decedent that he was going to die, the defendants, and each of them, did nothing to alter adequately the grossly inadequate medical care being administered at the Lauderdale County Detention Center, and each of them intentionally refused to grant Decedent proper medical treatment.
44. Defendants acted with deliberate indifference to decedent's known serious and life-threatening medical condition by refusing to place him in a medical unit, under constant medical supervision, or to allow him to have a rescue inhaler.
45. Decedent died a slow and painful death, slowly suffocating for a period of weeks while Defendants, including prison officials and employees of Southern Health Partners, watched him lie in the floor of his prison cell begging for treatment, begging to go to the emergency room, and begging for any type of help. Defendants watched decedent beg for his life, and then, when it was time to go home for the day, they left.
46. Observation reports show that Decedent requested treatment numerous times each day.
47. On February 3, 2015, the day before his death, the Defendant observing Decedent noted that he was in the middle of the floor on his hands and knees and yelling the officer's name.
48. On February 4th, 2015, the morning of his death, at 7:15 a.m., approximately fifty minutes before he stopped breathing, Decedent told the Defendant observing him that he needed to go to the emergency room.
49. On February 4th, 2015, the morning of his death, at 7:32 a.m., approximately forty-two minutes before he stopped breathing, Decedent told the Defendant observing him that he was going to die.
50. On February 4th, 2015, the morning of his death, at 7:53 a.m., approximately 11 minutes before he stopped breathing, the Defendant observing Decedent noted that Decedent was "on his knees in cell calling for help."
51. Only at approximately 8:04 a.m., after the Defendant had watched Davie Lee Chapman beg for his life while slowly asphyxiating for nearly fifty minutes, when Decedent finally lost consciousness and stopped breathing altogether did the Defendant observing attempt to help Decedent, by starting C.P.R., according to the observation report.

52. On February 4th, 2015, decedent slowly suffocated and died from a bronchial asthma attack. The same condition Decedent had notified Defendants of upon his incarceration, the same condition Decedent had been complaining of for several months; the same condition the Decedent filed over 38 grievances over; the same condition Decedent had filed a federal civil rights lawsuit over; the same condition Decedent was rushed to the emergency room for approximately two months prior.

53. Decedent endured an incalculable degree of cruel and inhuman punishment, unable to sleep, barely able to breath, unable to control his bodily functions, all the while attempting to gain relief through all possible administrative channels, but being intentionally ignored and medically mistreated by all those with the power to grant him reprieve.

54. Defendants' conduct was part of a policy, custom and practice designed to punish Decedent in a cruel and unusual manner.

55. The above alleged acts of the defendants and their agents, coupled with the complete failure of the defendants to provide any positive medical treatment for Davie Lee Chapman, constituted a course of medical care so clearly inadequate as to amount to refusal to provide essential care. Such acts were so blatantly inappropriate as to show evidence of intentional maltreatment resulting in the death of Davie Lee Chapman, in violation of the due process clause of the Fourteenth Amendment of the United States Constitution.

56. The above alleged acts of the defendants and their agents and the complete failure to provide positive medical treatment for Davie Lee Chapman, constituted cruel and unusual punishment, violative of the Eight Amendment to the United States Constitution.

57. The above alleged actions of the defendants were of a malicious and intentional nature and manifested a deliberate indifference of the request for essential medical treatment.

58. Each of the named Defendants were made aware and knew of Davie Lee Chapman's serious medical condition through his personal complaints, through his grievance forms filed, through observation reports by Defendants noting the seriousness of Decedent's condition, and through knowledge of his emergency room treatment.

59. Each of the named Defendants refused to treat Decedent properly, refused to order Decedent to be treated adequately, ignored his numerous complaints, ignored his cries for help as he lay dying, and intentionally treated him incorrectly.

60. Defendants' conduct, over the course of several months, constituted a policy, custom and practice evincing an objective deliberate indifference to Decedent's rights.

61. Each of the Defendants, including Defendants Sollie, Robinson, and Southern Health Partners, developed, instituted and implemented these policies that directly caused Decedent's death.

62. Defendants, and each of them, at all times relevant to the allegations herein, acted in their official capacities, under color of law, pursuant to customs, practices and policies developed, instituted and implemented by each of them and such conduct directly caused the death of Davie Lee Chapman.

63. Defendants , Dr. John Mutziger, and Southern Health Partners, and each of them, had a duty to conform to the standard of conduct for assessing, monitoring, treating and diagnosing asthma and asthma attacks to protect their patients from an unreasonable risk of injury.

64. The risk of injury to Davie Chapman was unreasonable in that his condition was easily observed, diagnosable, treatable and proper treatment would have saved his life.

65. Defendants , Dr. John Mutziger, and Southern Health Partners, and each of them, failed to properly assess, monitor, treat and diagnose Davie Chapman's symptoms and conditions, and in doing so breached the standard of care and such breach was a proximate cause of Mr. Chapman's injuries and death.

CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF

(§1983 – Eighth Amendment Violation – Failure to Provide Adequate Medical Care and Treatment)

66. Plaintiff hereby incorporates all other paragraphs in the Complaint as if fully set forth herein.

67. At all times relevant to the allegations in this Complaint, Defendants acted or failed to act under color of state law.

68. Defendants are persons under 42 U.S.C. § 1983.

69. At all times relevant to the allegations in this Complaint, Defendants knew of Mr. Chapman's life-threatening medical condition and he was being held as a prisoner at the Lauderdale

County Detention Center and was therefore entitled to necessary medical care as guaranteed by the United States Constitution.

70. Nevertheless, with deliberate indifference to Mr. Chapman's constitutional right not to be denied necessary medical care, protected by the Eighth Amendment to the United States Constitution, Defendants failed to examine, treat and care for Mr. Chapman's worsening condition and failed to send Mr. Chapman to the emergency room or for treatment, and failed to take other appropriate responses to his worsening condition. They did so despite their knowledge of Mr. Chapman's serious medical needs, placing him at risk of substantial physical harm.

71. Sheriff Sollie knew and was aware, at all times relevant to the allegations in the complaint, of the facts set forth above, including Decedent's life-threatening medical condition, he knew that it was an excessive risk to the safety and health of Decedent, and he willfully disregarded these risks.

72. The Supervisory Defendants, including Sheriff Sollie, Major Laurie Robinson, and Southern Health Partners, each have duties to train and supervise correctional officers, personnel, and medical staff in order to ensure the safety and well-being of inmates at the Lauderdale County Detention Center.

73. Each of the Supervisory Defendants failed to discharge these duties.

74. The Supervisory Defendants acted intentionally in failing to adequately train and supervise correctional officers, personnel and medical staff.

75. The Supervisory Defendants failure to properly train and supervise their subordinate employees was a moving force and proximate cause of the violation of Davie Lee Chapman's constitutional rights.

76. The Supervisory Defendants were responsible for the creation of policies regarding the medical care, observation and treatment of inmates.

77. The Supervisory Defendants implemented these policies in a way that allowed for officers, personnel and medical staff to punish inmates for requesting care and for filing grievances requesting help or treatment.

78. Defendants, and each of them, punished Davie Lee Chapman for requesting medical care and for filing grievances requesting treatment, in violation of his constitutional rights.

79. That the Supervisory Defendants failed to implement correct and fundamental policies and procedures that are designed to ensure that inmates receive the proper and necessary medical treatment that they require.
80. The acts and omissions of the Defendants caused Davie Lee Chapman injuries and damage in the form of extreme emotional distress and physical pain during the several months of his incarceration leading up to and ultimately causing his death.  Davie Lee Chapman suffered the loss of his life and enjoyment of the same, as well as the loss of enjoyment of life with his survivors.
81. The acts and omissions of the Defendants as described herein deprived Davie Lee Chapman of the rights, privileges and immunities secured by the United States Constitution, and caused him other damages.

## SECOND CLAIM FOR RELIEF
(Medical Malpractice and Negligence)

82. Defendants , Dr. John Mutziger, and Southern Health Partners had a duty to conform to the standard of care for monitoring, diagnosing, assessing and treating an inmate's serious health conditions and to the standard of care for responding to asthma attacks to protect inmates from unreasonable risk of injury.
83. Defendants failed to conform to those required standards.
84. Defendants' failure to conform to the standards of care was a proximate cause of Davie Chapman's suffering and death from an asthma attack.
85. Davie Chapman suffered for several months and ultimately died as a result of the negligence of the Defendants.

## PUNITIVE DAMAGES

86. Defendants' conduct evidenced a willful, wanton, malicious and reckless disregard for the constitutional rights and the standard of care with regard to medical treatment of Davie Lee Chapman and such conduct was the direct and proximate cause of his untimely and agonizing death.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in their favor and against Defendants, and grant:

    a. Appropriate relief at law and equity;

    b. Declaratory relief and other appropriate relief;

    c. Economic losses on all claims allowed by law;

    d. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowable at law in an amount to be determined at trial;

    e. Punitive damages on all claims allowed by law and in an amount to be determined;

    f. Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

    g. Pre- and post-judgment interest at the legal rate;

    h. Any further relief that this Court deems just and proper.

Respectfully submitted, this the 19th day of January, 2016.

                          PLAINTIFFS

                    By:   LOGAN & MAYO, P.A.
                           P. SHAWN HARRIS, P.A.

                         Their Attorneys

                         _____/s/ Mitchell D. Thomas_____
                         MITCHELL D. THOMAS
                         MSB# 104824
                         BRIAN D. MAYO
                         MSB # 100426
                         LOGAN & MAYO, P.A.
                         P. O. BOX 218
                         NEWTON, MS  39345
                         (601) 683-7888 (Telephone)
                         (601) 683-3885 (Facsimile)
                         mthomas@newtonmslaw.com
                         bmayo@newtonmslaw.com

                         P. SHAWN HARRIS

                        MSB # 9554
                        P. SHAWN HARRIS, P.A.
                        P.O. BOX 649
                        FOREST, MS 39074
                        (601) 469-9910 (Telephone)
                        (866) 387-1780 (Facsimile)
                        shawn@pshawn.com

## CERTIFICATE OF SERVICE

I, MITCHELL D. THOMAS, do hereby certify that I have this date filed electronically the above and forgoing pleading which sent electronic notification of the same to:

Hon. Lee Thaggard
Attorney for Defendants: Billie Sollie, Major Unknown Robinson, Captain Unknown McCarter
P.O. BOX 209
505 Constitution Ave.
Meridian, MS 39302-2009

Hon. Robert Mark Hodges
Attorney for Defendants: Nurse Sheila Hamilton, Dr. John Mutziger, Southern Health Partners
401 East Capitol Street, Ste-600
P.O. BOX 651 (39205-0651)
Jackson, MS 39201

Hon. Jason Paul Varnado
Attorney for Defendants: Nurse Sheila Hamilton, Dr. John Mutziger, Southern Health Partners
401 East Capitol Street, Ste-600
P.O. BOX 651 (39205-0651)
Jackson, MS 39201

THIS the  19th  day of   January  , 2016.

                                               /s/ Mitchell D. Thomas
                                              MITCHELL D. THOMAS
                                              Attorney for Plaintiff